DS130357

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

2022 MAY 20  AM 9: 08

DEPUTY CLERK __MS__

| | | |
|---|---|---|
| PAMELA L. GRAYSON; | § | |
| | § | |
| PLAINTIFF; | § | Civil Action No. _____ |
| | § | |
| V. | § | **3 - 22CV1119 - M** |
| | § | |
| DALLAS POLICE DEPARTMENT, GARLAND | § | TRIAL BY JURY DEMANDED HEREIN |
| POLICE DEPARTMENT, ALLEN POLICE | § | |
| DEPARTMENT, UNIVERSITY PARK POLICE | § | |
| DEPARTMENT, HIGHLAND PARK POLICE | § | |
| DEPARTMENT, DALLAS CITY MARSHAL'S | § | |
| OFFICE, DALLAS COUNTY SHERIFF'S | § | |
| OFFICE, TEXAS DEPARTMENT OF PUBLIC | § | |
| SAFETY, JOINT TERRORISM TASK FORCE, | § | |
| FEDERAL BUREAU OF INVESTIGATIONS, | § | |
| DEPARTMENT OF HOMELAND SECURITY, | § | |
| BUREAU OF ALCOHOL, TOBACCO, | § | |
| FIREARMS, AND EXPLOSIVES, UNITED | § | |
| STATES NATIONAL GUARD, RYAN | § | |
| MABRY, MELVIN WILLIAMS, JOE PREVITT, | § | |
| VICTOR ROCHA, JOHN DOE OFFICERS 1-50, | § | |
| CITY OF DALLAS, TEXAS, ULYSHA RENEE | § | |
| HALL | § | |
| DEFENDANTS. | § | |

---

## PLAINTIFF'S ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Pamela L. Grayson, (HEREINAFTER "Plaintiff" or "Dr.

Grayson") complaining of Defendants, Dallas Police Department, Garland Police

Department, Allen Police Department, University Park Police Department, Highland

Park Police Department, Dallas City Marshal's Office, Dallas County Sheriff's Office,

Texas Department of Public Safety, Joint Terrorism Task Force, Federal Bureau of

**PLAINTIFF'S Page 1 of 30**

Investigations, Department of Homeland Security, Bureau of Alcohol, Tobacco, Firearms, and Explosives, and United States National Guard & any other law enforcement agencies acting at the behest of Dallas Police Department of Dallas County, Texas ("Defendants") files this COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983 against above Defendants for cause of action and will show the Court and Jury as follows.

## I.   INTRODUCTION

1. In the wake of the brutal and unjustified May 25, 2020, killing of George Floyd by police officers in Minneapolis, Minnesota, hundreds of thousands of Americans took to public streets and forums to protest police brutality and racial inequality. Dallas was no exception, with peaceful protests occurring across the city for at least 100 straight days beginning May 29, 2020, and continuing throughout the remainder of 2020 (collectively referred to as the "2020 Protests"). Undeterred by the fact that police officers' use of excessive force was the very subject of these demonstrations, City of Dallas Police Department ("Dallas Police" or "DPD") officers repeatedly used extreme and lethal force against these crowds, targeting peaceful, non-threatening protesters and bystanders with tear gas, smoke bombs, flash-bangs, Pepper Balls, mace, and what are known as "kinetic impact projectiles," or "KIPs." And without regard to the ongoing global pandemic involving respiratory disease COVID-19, police have tear-gassed and smoke-bombed protesters, many of whom may have already been infected with COVID-19, making them more likely to suffer simply because they exercised their First Amendment rights.

2. On Monday, June 1, 2020, there was a peaceful march by the community to address the societal ill of police brutality against Black people. This was prompted by the brutal murder of George Floyd by former Minneapolis, Minnesota police officer Derek Chauvin. The peaceful march started at the Lou Sterett Justice Center, then went northbound on Riverfront to eastbound on the Margaret Hunt Hill Bridge where Dallas Police Department ushered the protestors onto the bridge. The protestors were then unknowingly and maliciously kettled on the bridge where they were subjected to detrimental abuse by the Dallas Police Department mercilessly shooting at the protestors with flash bangs and other non-lethal weaponry as if these protestors were fish in a barrel.

3. This is a civil action for monetary relief for injuries Plaintiff sustained as result of the acts and omissions of Defendants the City of Dallas, Former Chief of Police Reneé Hall, Ryan Mabry, Melvin Williams, and John Doe Officers 1-50. These Defendants, both individually and collectively, were responsible for the excessive use of force against Plaintiff and her physical injuries and constitutional violations of her First, Fourth, and Fourteenth Amendments. These injuries are the direct result of official policies of the City and failures by the City and Former Chief Hall to implement and enforce policies and standards that ensure Dallas Police officers know and are trained in the constitutional limits of force against civilians, particularly those exercising their First Amendment rights.

## II.      PARTIES

4. Plaintiff,

PLAINTIFF'S Page 3 of 30

     (a) Pamela L. Grayson ("Dr. Grayson" or "Plaintiff") at all times relevant herein, a citizen of the United States and native of Dallas, Texas and resides in Dallas County, Texas that is a Black woman.

5. Defendants,

     (a) Dallas Police Department, Victor Rocha, and John Doe Officers 1 – 50 as they were present and facilitated the kettling of the peaceful protestors.

     (b) Texas Department of Public Safety, Garland Police Department, Allen Police Department, University Park Police Department, Highland Park Police Department, Dallas City Marshal's Office, Dallas County Sheriff's Office, Texas Department of Public Safety, Joint Terrorism Task Force, Federal Bureau of Investigations, Department of Homeland Security, Bureau of Alcohol, Tobacco, Firearms, and Explosives, and United States National Guard as these departments were engaged by and operating at the behest of the Dallas Police Department leadership during the protests and would be vicariously liable and Res Ipsa Loquitur would apply.

     (c) Former Dallas Police Department Chief Ulysha Renee Hall as the kettling and brutal attacks with non-lethal weaponry by the co-defendants occurred under her direction. She was directly and/or indirectly responsible to ensure that the officers on that bridge had adequate training and thereby is responsible for the actions of all law enforcement officers on the Margaret Hunt Hill Bridge on the night of this incident.

(d) Dallas Police Officer Ryan Mabry, Former Dallas Police Officer Melvin Williams, and Garland Police Officer Joe Previtt as they have already been listed and indicted as law enforcement officers that exhibited excessive force to peaceful protestors during the timeframe of this event.

### III.   JURISDICTION

6.   Plaintiff brings this action pursuant to 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights). The jurisdiction of this court is founded on federal question jurisdiction.

7.   The Court has general personal jurisdiction over Defendants the City of Dallas, Chief Ulysha Reneé Hall, Texas Department of Public Safety, Garland Police Department, Allen Police Department, University Park Police Department, Highland Park Police Department, Dallas City Marshal's Office, Dallas County Sheriff's Office, Texas Department of Public Safety by virtue of their citizenship and residence in Dallas County, Texas, as well as their continuous and systematic contacts with the state of Texas. Defendant the City of Dallas is a municipality incorporated in the State of Texas. All other defendants were acting at the behest of the Dallas Police Department as well.

### IV. VENUE

8. Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs. 20. Venue in the Northern District of Texas-Dallas Division is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1367 as the incidents that gave rise to this Complaint occurred in Dallas, Texas, within the Northern District of Texas, and all Defendants reside within this district.

## V. CONDITIONS PRECEDENT

9. Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs.

10. All conditions precedent have occurred or have been performed. Fed. R. Civ. P. 9(c).

## VI.   FACTUAL BACKGROUND

11.   On Monday, July 1, 2020, there was a peaceful protest in front of the Lou Sterett Justice Center. At the end of the rally a march began.

12.   While marching down Riverfront Drive, Dallas Police Department ushered the protestors onto the Margaret Hunt Hill Bridge.

13.   Upon entry to the bridge, Dallas Police Department had already stopped traffic to allow the protestors onto the bridge.

14.   There were children as young as 7 years old in this protest.

15.   The protestors were met on the east end of the bridge by a line of police officers that were grinning from ear to ear as if they knew they were getting ready to inflict pain on this group of innocent protestors in their angst to disrespect their 1st Amendment rights to protest.

16.   Upon meeting the officers at the east end of the bridge, the protestors stopped and peacefully stood while chanting.

17. A young lady was carried off the bridge as she had already been struck with

and injured by a flash bang non-lethal weapon that was shot by law enforcement prior to any conflict occurring.

18.  At this point DPD began to shoot at the peaceful protestors.

19.  Some of the protestors began throwing bottles to deter the shooting by DPD.

20. The protestors had already turned and began to attempt to leave the bridge via the entrance used to get onto the bridge.

21.  Upon trying to vacate the bridge the protestors were met with another line of law enforcement officers that blocked their exit from the bridge, again grinning as if they had the protestors where they wanted them which was in an easy position to inflict pain.

22.  The law enforcement officers began to tell the protestors to get on the ground as they were all being arrested and began to zip tie the protestors who were laying down on their stomachs flat on the ground.

23.  The officers starting shooting at the crowd with non-lethal weaponry such as that in this pic below (Exhibit A). This was obtained off the ground after hitting a pole by protestor Damon Crenshaw on the night of June 1, 2020, on the Margaret Hunt Hill Bridge.



**Exhibit A**

There was also other non-lethal weaponry used such as round rubber bullets (Exhibit

B). This was obtained by Dr. Grayson during one of the protests the weekend of May 28

– 30, 2020. Page 28 of the George Floyd Protests After Action Report (GFPAAR) (Exhibit

C) lists the amount of non-lethal artillery that was used and tracked. There was more

usage than what was reported.



**Exhibit B**

*Less-than-Lethal Tools Used Between May 29 and June 1, 2020*

The following information details the less-than-lethal use of force by Dallas SWAT and Patrol officers during the days of May 29 and June 1, 2020.

### DPD SWAT

#### Hand Deployed Items.

| Item Description: | Estimated Quantity Utilized: |
|---|---|
| Tripler Phaser Canister Gas | 36 |
| CS Riot Smoke | 106 |
| Outdoor/Max Smoke | 23 |
| CS Flameless Tri-Chamber | 31 |
| CN Flameless Tri-Chamber | 23 |
| CS or QC or OC/CS Indoor Vapor (Gas) | 30 |
| CS Tear Ball | 36 |
| Non-irritant Sting Ball | 32 |
| **Estimated Total Hand Deployed Utilized by SWAT:** | **317** |

#### 40 MM Launcher Deployed Items.

| Item Description: | Estimated Quantity Utilized: |
|---|---|
| Exact Impact Foam Baton | 84 |
| Exact Impact Foam Baton (Extended Range) | 76 |
| Direct Impact OC | 32 |
| Multi 3-Foam Baton | 54 |
| .60 Cal Sting Ball | 40 |
| Ariel Flash Bangs (Various Range Styles) | 47 |
| Skat Shell CS | 2 |
| **Estimated 40mm Launcher Deployed Utilized by SWAT:** | **335** |

#### Patrol

| Item Description: | Estimated Quantity Utilized: |
|---|---|
| Pepperball | 33 |
| 40 MM | 35 |
| Taser | 3 |
| OC Spray | 4 |
| **Estimated Less Lethal Deployed by Patrol:** | **75** |

**PLAINTIFF'S Page 9 of 30**

24.  Dr. Grayson was preparing to obediently get on the ground as instructed.

25.  Dr. Grayson was struck on the right side of her forehead roughly about an inch above her right eyebrow by a non-lethal rocket shot unnecessarily by a law enforcement officer on that bridge.

26.  Dr. Grayson had done nothing to these officers. She was in the middle of the crowd and did not have direct eyesight or access to the officers.

27.  There were people in front of and behind Dr. Grayson on the ground.

28.  When the non-lethal rocket hit Dr. Grayson on her head, she fell to the ground in tremendous pain and shock (Exhibit D). A gigantic bloody egg formed on her head immediately. Dr. Grayson did not immediately realize it was bleeding.



**Exhibit D**

29. At this point the teargas and smoke began to obstruct Dr. Grayson's ability to breathe as she is reeling from the pain of being shot in the head by DPD with the non-lethal rocket.

30. An individual pulled a bottle of milk from Dr. Grayson's backpack and began to pour it on her face.

31. At this point Dr. Grayson and all protestors began to get on the ground. The protestors then began to beg DPD to stop shooting at them (Per Dr. Grayson's video).

32. Dr. Grayson began to regain some cognizance and began to look for her child who was with a friend that she had thought had gotten off the bridge but discovered had not.

33. Dr. Grayson managed to locate her son who was with another protestor that was her friend located towards the back.

34. Dr. Grayson, her son, and her friend with which she had attended the march were released from the bridge without being arrested.

### The Exchange with Dallas Police Chief U. Renee Hall

35. Dr. Grayson walked off the bridge and directly into Dallas Police Chief Renee Hall, who was standing across the street at the 711 gas station. Dr. Grayson recorded this conversation and has it on video.

36. Chief Hall blatantly admitted that Dr. Grayson should never have been shot.

37. Chief Hall began to chastise protestors for going on the bridge and stated that she nor DPD knew that the protestors would be going on the bridge, yet page 24 of the GFPAAR states that she and all defendants had this intel. "Sources had indicated to Intelligence that the event organizer intended to march to Trinity Groves, a newly developed and upscale district across the Margaret Hunt Hill Bridge from the courthouse…".

38. Chief Hall pretended to not know what members of law enforcement were on the bridge.

39. Chief Hall pretended to not know that her officers purposely blocked the protestor's exit off the bridge with the intent of kettling to harm the protestors.

40. On page 37 of the George Floyd Protests After Action Report it was reported that there were training failures due to the majors were not trained on their commands.

41. On page 18 of the George Floyd Protests After Action Report it states "As the rioting and looting of May 29 spread and the resources assigned to assist in operations grew, clear lines for sharing observations and relaying orders became increasingly challenged. Although significant training had been conducted regarding the necessity of coordinating all action through the Incident Command Post, the stress of the environment and the previously mentioned failure to delineate the chain of command, created confusion within the ranks as to where direction should be originating from." Another indication that the ability to implement any previous necessary training was an absolute issue within this protest.

PLAINTIFF'S Page 12 of 30

42.  Page 41 of the GFPAAR states "During operations, it was clear to Field Commanders that regular and reoccurring training on Mobile Field Force Tactics is needed. Officers and supervisors were slow and unsure as to the best method for forming lines and appeared unsure as to the best tactics during officer/protestor encounters."

## The Aftermath

43.  After the event Dr. Grayson went to the emergency room to get checked out as the wound on her head was stinging and growing.

44.  Dr. Grayson later had to have an MRI to confirm no further damage but still suffered further pain and discomfort.

45.  Dr. Grayson's ears began to ring after the event. This led to multiple ENT doctor visits and Dr. Grayson having to be fitted with over 4000.00 in hearing aids as her hearing diminished behind being injured at this event.

46. Dr. Grayson's eyesight has diminished in her right eye.

47.  Dr. Grayson took professional pictures in her doctorate regalia and other apparel and those pics were ruined by the knot on her head still showing 1.5 months later (Exhibit E).



**Exhibit E**

## VII. Causes of Action

***Count 1: Civil Rights Claim (42 USC § 1983)***
***Violation of First Amendment Rights Against the City of Dallas, Dallas Police Department, and the Texas Department of Public Safety, Garland Police Department, Allen Police Department, University Park Police Department, Highland Park Police Department, Dallas City Marshal's Office, Dallas County Sheriff's Office, Texas Department of Public Safety, Joint Terrorism Task Force, Federal Bureau of Investigations, Department of Homeland Security, Bureau of Alcohol, Tobacco, Firearms, and Explosives, and United States National Guard in the capacity of acting under the leadership of the Dallas Police Department, Dallas Police Officer Ryan Mabry, Former Dallas Police Officer Melvin Williams, Victor Rocha, John Doe Officers 1 – 50, Chief Renee Hall, and Garland Police Officer Joe Previtt***

48. Plaintiff by reference incorporates and realleges all of the preceding

paragraphs as though fully stated herein.

49. Plaintiff engaged in constitutionally protected acts of observing, recording, or participating in events of public interest, including public demonstrations and in expressing her political views. Plaintiff will continue to do so in the future.

50. In 2018, Former Chief Hall admitted that she knew "less lethal" ammunition was being used against peaceful protestors who were not threatening to commit property damage or physical violence but encouraged and defended the practice because it dispersed the crowds.

51. The actions of Defendants involving the suppression of a peaceful demonstration and the viewpoint it represented—and the actions of Former Chief Hall in ordering such suppression, deprived Plaintiff of her rights under the First Amendment to the United States Constitution to freedom of speech, freedom of press, freedom of assembly, and freedom to petition the government for a redress of grievances. Defendants deliberately violated well-established limitations on the exercise of speech and assembly in public places.

52. Defendants retaliated against Plaintiff for engaging in constitutionally protected activity and for the content and viewpoint of her expressions. Defendants' retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief.

53. Defendants' violent actions were not a reasonable regulation of the time, place, or manner of Plaintiff's First Amendment protected activity. These actions were not justified by a compelling—or even substantial—government interest justifying the infringement of Plaintiff's First Amendment rights. Even assuming, arguendo, that

**PLAINTIFF'S Page 15 of 30**

there had been a compelling government interest in protecting against property damage or clearing streets of protestors, Defendants' actions toward Plaintiff and the groups of protesters were not narrowly tailored to serve that government interest in a lawful manner

54. It was the City of Dallas' custom and policy, as well as the City of Dallas' and Former Chief Hall's failure to train and supervise Dallas Police officers and issue corrective instructions after violations were brought to light, which caused the First Amendment retaliation.

55. Defendants' continued failure to supervise and train Dallas Police officers with respect to the First Amendment rights of Plaintiff amounts to deliberate indifference to the rights of Plaintiff.

56. The pattern of similar constitutional violations against Plaintiff and other protesters that occurred during the 2018 and 2020 protests demonstrates the deliberate indifference of the Defendants to the rights of Plaintiff and other protesters.

57. Further, given the multiple constitutional violations documented above, the need for more supervision or training was so obvious, and the inadequacy of the training and supervision so likely to result in the violation of constitutional rights, that Defendants demonstrated their deliberate indifference to the need for such training and supervision.

58. Plaintiff's First Amendment rights were violated when they were deliberately targeted and shot with KIPs, tear gas, flashbang grenades, and smoke during the course of her protest activities.

59. Defendants intentionally and with reckless disregard caused the injury of Plaintiff by use of physical force to suppress free speech, which was instructed or authorized by Former Chief Hall. These actions or omissions were the direct result of the City of Dallas' written and unwritten policies.

60. As a direct and proximate result of the acts and omissions of Defendants set forth above, Plaintiff was deprived of her First Amendment rights to freedom of speech, freedom of press, freedom of assembly, and freedom to petition the government for a redress of grievances. Plaintiff's First Amendment rights were further chilled, and Plaintiff suffered injuries and damages.

*Count 2: Civil Rights Claim (42 U.S.C. § 1983)*
*Excessive Force*
*Violation of Fourth and Fourteenth Amendment Rights*
*Against Defendants the City of Dallas , Dallas Police Department,  and the Texas Department of Public Safety, Garland Police Department, Allen Police Department, University Park Police Department, Highland Park Police Department, Dallas City Marshal's Office, Dallas County Sheriff's Office, Texas Department of Public Safety, Joint Terrorism Task Force, Federal Bureau of Investigations, Department of Homeland Security, Bureau of Alcohol, Tobacco, Firearms, and Explosives, and United States National Guard in the capacity of acting under the leadership of the Dallas Police Department, Dallas Police Officer Ryan Mabry, Former Dallas Police Officer Melvin Williams, Officer Victor Rocha, John Doe Officers 1 – 50, Chief Renee Hall, and Garland Police Officer Joe Previtt*

61. Plaintiff incorporates by reference and reallege all of the preceding paragraphs as though fully stated herein.

62. At all times alleged herein, Defendants were sworn police officers with the Dallas City Police Department or at the behest of the Dallas City Police Department and acting under color of law.

63. At all relevant times alleged herein, no citizen, officer, or bystander was in imminent fear for their life or in fear of the Plaintiff causing them serious bodily injury.

64. At all relevant times alleged herein, Plaintiff never threatened to harm any property.

65. At all relevant times, Plaintiff possessed the right to be free from excessive force.

66. Defendant Hall instituted a policy and practice of using excessive force against nonthreatening, peaceful protesters as a means of intimidation and control.

67. Defendants used objectively unreasonable force when Plaintiff did not pose an imminent threat of death or serious bodily injury to the Defendants or any other person during the relevant time alleged herein

68. Defendants further used objectively unreasonable force when Plaintiff did not pose any threat of harm to property during the relevant time alleged herein.

69. Several officers on the bridge did not use any force at all because it was unreasonable and unjustified. This further demonstrates that Defendants use of force was objectively unreasonable.

70. It is clearly established law that using physical force such as KIPs — including rubber, sponge, or pepper bullets — against a non-threatening individual is unreasonable and violates the Fourth Amendment right to be secure in their person. And, given the gross disparity between the need for force and the level of pain and injury inflicted, the officers' use of force was malicious and sadistic.

71. Defendants did not need to fire KIPs at a non-threatening peaceful crowd. Moreover, the use of KIPs bullets was unwarranted and excessive to the articulated need of dispersing protesters from the Margaret Hunt Hill Bridge and excessive to the purported need of effectuating arrest.

72. Likewise, Defendants' use of force was inappropriate and unwarranted as a use of crowd control for peaceful, non-threating participants in protests, in violation of the Plaintiff's Fourteenth Amendment rights to due process.

73. The excessive force used by Defendants is the direct result of the City of Dallas' de facto unwritten policy allows police to use "less lethal" — but not "nonlethal" — ammunition and devices against a crowd, including against protesters who are not immediately threatening serious physical injury. The City of Dallas knew since at least the 2018 protests following Botham Jean's death of the obvious risk that KIPs would cause the type of physical and constitutional injuries that Plaintiff have suffered. And the City of Dallas has used sponge/rubber bullet KIPs since at least 2013. Yet the City has never developed any written or unwritten policy regarding the constitutional use of the KIPs and, thus, it was highly predictable that Dallas Police officers would continue to violate protesters', bystanders', journalists', and citizens' (like Plaintiff) constitutional rights using sponge/rubber and other KIPs. Accordingly, the City of Dallas and Defendant Hall have been deliberately indifferent to the complete lack of training, or completely inadequate training, they have given Dallas Police officers on these "less lethal" forms of ammunition.

74. The written and unwritten policies of the Defendant the City of Dallas, therefore, are the moving forces behind Plaintiff's constitutional violations inflicted through the excessive force of Defendants.

75. As a direct and proximate cause of Defendants' use of excessive force, Plaintiff suffered and continue to suffer severe injuries including, but not limited to, emotional distress and physical pain and lifelong suffering.

*Count 3: Civil Rights Claim (42 U.S.C. § 1983)*
*Failure to Supervise & Discipline*
*Violation of Fourth and Fourteenth Amendment Rights Against the City of*
*Dallas, Dallas Police Department, and Former Chief Ulysha Reneé Hall in her*
*individual capacity*

76. Plaintiff incorporates by reference and reallege all of the preceding paragraphs as though fully stated herein.

77. The City of Dallas and Former Chief Hall are directly responsible for supervising police officers in the use of physical and lethal force and for disciplining police officers for using force that violates City policies or the United States Constitution.

78. The City of Dallas and Former Chief Hall knew at least as early as 2018 that Dallas Police officers were using KIPs like Pepper Balls as a means of crowd control for non-threatening protestors in violation of the General Orders of the Dallas Police and the United States Constitution. Dr. Grayson was one of these protesters that sustained this unlawful use of less-lethal forms of ammunition during this time as well. But the City of Dallas and Former Chief Hall deliberately chose not to supervise Dallas Police

**PLAINTIFF'S Page 20 of 30**

officers to ensure they were only using KIPs within the constitutional limits on the use of force. The City of Dallas and Former Chief Hall also failed to discipline officers who used KIPs against non-threatening protesters or to discipline officers who used KIPs in a manner that violated the General Orders and the Constitution. Instead, Former Chief Hall further authorized the unsafe use of KIPs and authorized the further use of the ammunition to peaceful, nonthreatening, protestors, as a means of crowd control and to deter the exercise of Plaintiff's First Amendment rights. This constituted deliberate indifference toward the outrageous and reckless use of force.

79. The City of Dallas and Former Chief Hall also knew of the risks associated with the 40 mm eXact iMpact extended range sponge round, including certain incapacitation, or significant injury. But the City of Dallas and Former Chief Hall also failed to take disciplinary action in response to the unlawful use of KIPs against non-threatening crowds protesting the death of George Floyd in 2020. The City of Dallas and Former Chief Hall also failed to take disciplinary action in response to officers using KIPs for crowd control in an unlawful manner that was likely to cause serious injuries and possibly death.

80. Although the City of Dallas has used sponge and/or rubber bullet KIPs since at least 2013 and the City issued General Orders for less lethal Pepper Ball KIPs by 2016 at the latest, the City and Former Chief Hall have never issued General Orders regarding sponge and/or rubber bullet KIPs. Likewise, Former Chief Hall and the City of Dallas ratified the use of Pepper Ball KIPs against non-threatening protestors in violation of those General Orders. Upon information and belief, to date, none of the

PLAINTIFF'S Page 21 of 30

Defendant officers or any other Dallas PD officers present or working during the 2020

Protests have been terminated, disciplined, required to have additional supervision, or

required to undergo additional training. Accordingly, given that Former Chief Hall did

not discipline or supervise police officers who used sponge and/or rubber bullet KIPs

against Plaintiff and other non-threatening protesters, it is reasonable to infer that in the

eyes of the City of Dallas and Former Chief Hall, the officers' illegal conduct actually

conformed with City policy.

81. These written and unwritten policies of the Defendant the City of Dallas in

failing to supervise or discipline the Dallas Police officers are, therefore, the moving

forces behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights.

82. As a direct and proximate result of Defendants' acts and omissions as stated

above, Plaintiff was deprived of her Fourth and Fourteenth Amendment rights and

suffered injuries and damages.

### Count 4: Civil Rights Claim (42 U.S.C. § 1983)
### Failure to Train
### Violation of Fourth and Fourteenth Amendment Rights
### Against the City of Dallas, Dallas Police Department and Chief Reneé Hall in her individual capacity

83. Plaintiff incorporates by reference and reallege all of the preceding

paragraphs as though fully stated herein.

84. The City of Dallas and Former Chief Hall are directly responsible for training

on the use of firearms with regard to lethal and allegedly less lethal impact weapons,

the manner of use, distance of use, and use of force continuum.

85. Former Chief Hall had direct supervisory and policymaking responsibilities for police officers in the use of physical and lethal force.

86. Defendant Hall knew of the risks associated with the 40 mm eXact iMpact extended range sponge round but failed to institute any training with regard to the range and risks of certain incapacitation, or significant injury.

87. Defendant Hall and the City of Dallas knew that as of 2018, the Dallas Police Department officers were using KIPs like Pepper Balls as a means of crowd control for non-threatening protestors in violation of the General Orders of the Dallas Police and the United States Constitution. But Former Chief Hall deliberately chose not to train the Dallas Police officers regarding the threat level necessary to justify using the Pepper Ball System or other KIPs against a crowd within the constitutional limits on the use of force. Instead, Defendant Hall further authorized its use and authorized the further use of such ammunition toward peaceful, nonthreatening protestors as a means of crowd control and to deter the exercise of Plaintiff's First Amendment rights. This constituted deliberate indifference and outrageous and reckless use of force.

88. The City of Dallas and Former Chief Hall also knew of the risks associated with the 40 mm eXact iMpact extended range sponge round, including certain incapacitation, or significant injury. But the City of Dallas and Former Chief Hall also failed to train officers in the threat level necessary to justify using the sponge bullet KIPs against crowds within the constitutional limits on the use of force. The City of Dallas and Former Chief Hall also failed to train officers to use KIPs in manners unlikely to cause serious injuries and death.

89. Even after the abuses of Pepper Ball KIPs in 2018, Former Chief Hall and the City of Dallas ratified the use of Pepper Ball KIPs against non-threatening protestors in violation of applicable General Orders and the Constitution. The City of Dallas and Former Chief Hall actually knew or should have known that that approach has failed to prevent tortious conduct by Dallas Police officers. The City of Dallas and Former Chief Hall's continued adherence to approving of using KIPs in violation of the General Orders and the Constitution demonstrates the conscious disregard the City of Dallas and Former Chief Hall have for the consequences of their actions.

90. Large-scale protests against police brutality have taken place in Dallas with increasing regularity. And each time Dallas Police officers are on the scene at such protests, they come clad in riot gear and armed with riot control devices, and often travel in armored vehicles. Repeatedly since protests began in Dallas on May 29, 2020, Dallas Police officers have used KIPs, tear gas, flash-bang grenades, and other riot control devises against protestors who are not threatening, thereby violating the protesters' constitutional rights.

91. The need for training officers in how to use KIPs lawfully in these recurring situations—particularly where no training has been provided—could hardly have been more obvious to the City of Dallas or Former Chief Hall since at least the unlawful use of KIPs against crowds in the 2018 protests following Botham Jean's death. Absent such training regarding situations like this that are likely to recur, it was highly predictable that Dallas Police officers would continue to violate protesters' constitutional rights. Accordingly, the City of Dallas and Former Chief Hall were deliberately indifferent to

the complete lack of training, or completely inadequate training, they have given Dallas Police officers.

92. These written and unwritten policies of the Defendant the City of Dallas in failing to train the Dallas Police officers, therefore, are the moving forces behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights.

93. As a direct and proximate result of Defendants' acts and omissions as stated above, Plaintiff was deprived of her Fourth and Fourteenth Amendment rights and suffered injuries and damages.

### Qualified Immunity under § 1983

94. Members of Law Enforcement may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

a. The individual's acts deprived the party of constitutional rights under color of law;

b. The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

c. Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

### VIII.   DAMAGES

95. Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs.

96. Defendants' acts and/or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiff and Defendants should be held jointly and severally liable for all damages.

97. In whole or in part, as a result of some or all of the above actions or omissions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of these violations. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and will continue to suffer severe pain of mind and body, emotional dress, physical manifestations of emotional distress, humiliation, loss of enjoyment of life, disfigurement, physical impairment, and loss of earnings and earning capacity. As a direct and proximate result of Defendants' acts and omissions, Plaintiff was prevented and will continue to be prevented from participating as an activist and peaceful protester with regard to causes that directly impacts her life and the lives of her friends, family, and communities. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has required and will in the future require medical treatment, therapy, counseling, and/or hospitalization to address the physical and mental injuries caused by Defendants' acts and omissions.

98. As a direct and proximate result of Defendants' actions and omissions, as stated above, Plaintiff suffered:

(a) Physical pain and suffering in the past and future;

(b) Mental anguish in the past and future;

(c) Medical expenses in the past and future;

(d) Disfigurement in the past and future;

(e) Physical impairment in the past and future;

(f) Lost earnings in the past and future;

(g) Loss of earning capacity in the past and future;

(h)Loss of Enjoyment of life in the past and future.


## IX. STATUTORY DAMAGES

99. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

100. Plaintiff is entitled to compensatory damages and punitive damages pursuant to 42 USC § 1988.

101. As a direct and proximate result of Defendants' acts and omissions in the foregoing respects, Plaintiff has been required to retain the services of legal counsel and to incur attorney's fees and costs thereby to include costs of court.

102. Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983. Plaintiff is entitled to an award of reasonable attorney's fees and costs of court. See 42 U.S.C. 1988.


## X.    PUNITIVE/EXEMPLARY DAMAGES

103. Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs.

104. Additionally, and in the alternative, the conduct of Defendants was done with malice and/or a specific intent by Defendants to cause substantial injury or harm

to Plaintiff. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.

105. In the alternative, Defendants heedless and reckless disregard of Plaintiff's rights, safety, and welfare constitutes more than momentary thoughtlessness, inadvertence, or misjudgment. Instead, Defendants acted with reckless or callous indifference to the federally protected rights, safety, or welfare of others. Defendants had actual, subjective awareness of the risks of injury or illegality involved, but nevertheless proceeded with conscious, reckless, or callous indifference to the rights, safety, or welfare of others, including Plaintiff. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiff's request punitive and exemplary damages are awarded against Defendants in a sum which is within the jurisdictional limits of this court.

## XI. JURY TRIAL DEMANDED

106. Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

## XII. PRAYER

107. WHEREFORE, Plaintiff requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of

**PLAINTIFF'S Page 28 of 30**

the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

(a) Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to past and future: pain and suffering, medical expenses, loss of earnings and earning capacity, mental anguish, anxiety, humiliation, and embarrassment, disfigurement, physical impairment, violation of Plaintiff's Federal and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

(b) Statutory compensatory damages and punitive damages pursuant to 42 USC § 1988;

(c) Statutory attorneys' fees and costs pursuant to 42 USC § 1988;

(d) Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

(e) Reasonable attorney fees, pre-judgment and post-judgment interest, and costs; and

(f) Other declaratory, equitable, and/or permanent injunctive relief, as appears to be reasonable and just

Original Signature
Pamela L. Grayson
5207 Grovewood St.
Dallas, Texas 75120
Phone: 469-364-0270
Email: pamela.grayson@gmail.com

JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

3-22CV1119-M

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dr. Pamela Grayson

**DEFENDANTS**

The City of Dallas, Dallas Police Department, et al.

**(b)** County of Residence of First Listed Plaintiff **Dallas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Dallas**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

RECEIVED

MAY 20 2022

MS

CLERK U.S. DISTRICT COURT

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question
  *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & | 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' Liability | Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 861 HIA (1395ff) 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS—Third Party 26 USC 7609 | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC § 1983
Brief description of cause:
Violation of civil rights, First Amendment U.S. Constitution

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
05/20/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____